# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RODNEY AND SHIRLEY DUTTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-13-1239-HE |
| | ) | |
| THE CITY OF MIDWEST CITY, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiffs, Rodney and Shirley Dutton, a married couple appearing *pro se* and *in forma pauperis*, brought this action pursuant to 42 U.S.C. § 1983. At this stage of the litigation, the case has been narrowed to claims of false arrest and excessive force against two defendants, the City of Midwest City ("the City") and Officer Danny Peterson.[1] Presently at issue are cross motions for summary judgment.

The status of any claims asserted by plaintiff Shirley Dutton will be addressed first. While the complaint and plaintiffs' motion have been signed by both Mr. Dutton and Ms. Dutton, it is clear that the remaining claims here are those only of Mr. Dutton. To bring a claim in a federal court, a plaintiff must demonstrate that he or she has standing to invoke the court's jurisdiction. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). This requires the plaintiff to show, among other things, that he or she has suffered a concrete and

---

[1] *Plaintiffs originally named the State of Oklahoma and the Oklahoma County Detention Center as defendants, but the claims against them were previously dismissed [Doc. #26]. Plaintiffs later sought to add claims for malicious prosecution and false imprisonment against the prosecutors involved in the criminal prosecution of Rodney Dutton, but leave to do so was denied on the basis of prosecutorial immunity [Doc. #56].*

particular injury in fact. *Id.* In general, a party must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Kowalski v. Tesmer, 543 U.S. 125 (2004)). Here, the asserted claims involve only alleged violations of Mr. Dutton's constitutional rights arising out of his arrest, and he is seeking to assert his own rights directly. In these circumstances, there is no basis for Ms. Dutton asserting claims on behalf of Mr. Dutton, and there is no suggestion that her own constitutional rights were violated. Defendants' motions will therefore be granted as to any claims asserted here by Ms. Dutton.[2]

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). In determining whether this standard is met, the court views the evidence in the light most favorable to the non-moving party. Estate of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir. 2014). "Where the facts are not in dispute and the parties only disagree about whether the actions were constitutional, summary disposition is appropriate." Christian Heritage Acad. v. Okla. Secondary Schs. Activities Ass'n, 483 F.3d 1025, 1030 (10th Cir. 2007). "[C]ross motions for summary judgment are to be treated separately." *Id.* (quoting Buell Cabinet Co., Inc. v. Sudduth, 608 F.2d 431, 433 (10th Cir.1979)). Applying these standards, the court concludes that defendants' motion for summary judgment should be granted and plaintiffs' motion denied.

---

[2]*References to "plaintiff" hereafter refer to Mr. Dutton only, unless otherwise indicated.*

Background

Viewing the evidence in the light most favorable to plaintiff, the undisputed facts are as follows:

On November 24, 2011, Midwest City police officers, including defendant Danny Peterson, responded to a reported disturbance in plaintiff's neighborhood. While investigating the report, the officers noticed that plaintiff's garage door was open and that a strong odor of gasoline came from the garage. There were numerous jars of gasoline in the garage, with rags covering them or hanging from them, as well as a bucket wired underneath the vehicle. The officers tried to speak with Mr. Dutton, but he refused to do so. Plaintiff's evidence is that he did not answer the door because he was concerned he would be wrongfully arrested again.[3] He acknowledges that there were outstanding arrest warrants from prior incidents.[4] At some later point after the officers' arrival, plaintiff spoke to the officers from inside the house, while they were standing at the edge of the garage, and told them to leave. He acknowledges that he did so "using some profanity when I said this." Doc. #49-1 at 6. He indicates he then went to another room, took some prescription pain

---

[3]*See plaintiff's complaint [Doc. #1] at 8. He indicates he had been wrongfully arrested twice in September 2011, and was working on civil rights cases against the officers involved in those arrests when the events of November 24 occurred. (Page references to particular documents are to the page number assigned by the court's filing system, rather than those in the documents themselves.)*

[4]*Doc. #1 at 6-7. The warrants arose out of an alleged domestic violence incident and an incident which plaintiff indicates involved him throwing a brick at a stray dog but which missed and hit a neighbor's house. Plaintiff viewed these arrests as unlawful and argues that "the municipal warrant for them that was executed during my felony arrest was unenforceable" as a result. Doc. #1 at 13-4.*

medications, and went to sleep. Plaintiff does not dispute defendants' evidence that Officer Petersen then contacted a supervisor, who called in the SWAT team and other officers.

Hours later, plaintiff woke up and the SWAT team sought to arrest him. While standing in the front yard, officers shot plaintiff through the living room window with what defendants describe as two sponge projectiles.[5] Mr. Dutton then fled to another room. The SWAT team pursued him, shot him a third time with the same type of projectile, and then arrested him. He was taken to the hospital for evaluation.

Mr. Dutton was charged in the District Court of Oklahoma County, Oklahoma, with fifteen felony counts of manufacturing or possessing an explosive device in violation of 21 Okla. Stat. § 1767.1. The charges were based on the arresting officers' view of the gasoline containers as Molotov cocktails.[6] At the preliminary hearing on the charges, the state judge concluded that probable cause for the arrest existed and bound Mr. Dutton over for trial on the charges. At trial, the trial judge sustained Mr. Dutton's demurrer to the evidence, concluding that the state has not produced sufficient evidence to show the necessary criminal intent to sustain a conviction.

## Discussion

Plaintiff's motion for summary judgment is principally based on the argument that,

---

[5]*Defendants' evidence is that the arrest involved use of a non-lethal launcher which used a sponge-tipped projectile. Plaintiff does not dispute this, stating "I was struck twice with what I thought were large rubber bullets." Doc. #49-1 at 7. He indicates the projectiles caused large bruises on his chest and stomach.*

[6]*Affidavit of Probable Cause, Doc. #1-4.*

in light of the final disposition of the state criminal proceedings, he was falsely arrested and is therefore entitled to judgment. As discussed more fully below in connection with defendants' motion, that conclusion is incorrect. The propriety of the arrest in circumstances such as these is determined by whether the officer had probable cause for it, not whether defendant was ultimately convicted of the offense. Further, the motion itself is insufficient under the standards of Fed.R.Civ.P. 56.[7] In any event, the court concludes plaintiff's motion must be denied.

In defendants' motion, Officer Danny Peterson asserts qualified immunity as a defense. Where that defense is asserted, the plaintiff must show that "(1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009) (internal citations omitted). Relying on Monnell v. Dept. of Soc. Servs., 436 U.S. 658 (1978), the City contends that summary judgment should be granted in its favor because (1) no constitutional violation occurred, and (2) even if a violation did occur, it was not the result of a municipal custom or policy such as might be the basis for municipal liability.

False Arrest Claim

The court concludes the undisputed facts show there is no constitutional violation for false arrest in these circumstances. As noted above, it is undisputed that there were

---

[7]*The court acknowledges that plaintiff is proceeding pro se, and notes that his filings and analysis reflect a considerably better understanding of pertinent legal principles than do most pro se filings. However, the motion lacks the necessary references to particular materials and authorities such as might support a summary judgment.*

5

outstanding warrants for plaintiff's arrest and it may be that the warrants, by themselves, provided a sufficient basis for his arrest. However, as the parties' submissions do not squarely address the question of whether the arrest was attempted on the basis of those warrants, or whether the officers knew of them at the time, the court declines to rest its decision solely on the existence of the warrants. The arrest would have been valid even in the absence of a warrant.

An arrest is justified without a warrant if the officer has probable cause to believe the arrestee has committed an offense in the officer's presence. Atwater v. Lago Vista, 532 U.S. 318, 322 (2001). Probable cause exists when "the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." United States v. Valenzuela, 365 F.3d 892, 896 (10th Cir. 2004) (internal quotations omitted). Here, the undisputed facts show probable cause to have been present at the time of the plaintiff's arrest, as the state court concluded in binding over the defendant. The officers were responding to a call of a disturbance. While in a location where they were entitled to be (i.e., the "edge" of the open garage, not in it), they observed what they reasonably thought to be Molotov cocktails, including numerous gas containers with rags in or on them, and various wires and other equipment the purpose of which was not obvious. They sought to address the circumstances with Mr. Dutton, but he refused to do so and, using profanity, told them to leave. It appears at least Officer Petersen knew of Mr. Dutton's recent arrests and the related incidents. These circumstances were sufficient to give

6

the officers probable cause to arrest Mr. Dutton on the charge of unlawfully possessing incendiary devices with an intent to harm.

Mr. Dutton asserts that he had an innocent reason for the multiple containers of gasoline and he repeatedly emphasizes the state court's ultimate conclusion that the government lacked sufficient evidence of intent to justify a conviction. However, an arrest need not result in a conviction in order to be constitutional; rather, the arrest must merely be based on probable cause, which is a less exacting standard than is required for a conviction. Valenzuela, 365 F.3d at 896. It is also worth noting that discussions between Mr. Dutton and the officers might well have avoided the arrest—he might have persuaded them, as he did the state court, that his intentions and the circumstances were innocent—but he aggressively refused to have any discussion. In any event, probable cause existed at the time of Mr. Dutton's arrest and the arrest therefore met the pertinent constitutional standards.

In light of the court's conclusion that a constitutional violation did not occur by reason of the arrest, it is unnecessary to consider whether Officer Peterson might also be entitled to summary judgment based on whether the pertinent right was "clearly established." Similarly, it is unnecessary to belabor the question of whether a basis for municipal liability exists under Monnell, as an underlying constitutional violation must be shown.[8]

Summary judgment will be entered for defendants as to the false arrest claim.

---

[8]*Plaintiff does not appear to challenge Midwest City's assertion that no basis for municipal liability exists for any violation which did occur, i.e., there is neither the necessary "policy" nor "custom and practice" such as might be the basis for municipal liability.*

Excessive Force

Officer Peterson argues that he cannot be liable for any excess force claim because he was not involved in the physical arrest of plaintiff, including the use of the sponge projectiles. Rather, he indicates these actions were undertaken solely by the SWAT team, which Officer Peterson was not a part of.[9] Plaintiff does not appear to contest Peterson's lack of direct involvement in effecting the arrest at issue, but instead alleges that the officer applied excessive force on Mr. Dutton in prior arrests. Because § 1983 liability requires personal involvement in the alleged violation, Porro v. Barnes, 624 F.3d 1322, 1327-28 (10th Cir. 2010), whatever role Peterson played in the prior arrests does not support a claim against him for the arrest involved here. Further, there is no other apparent basis for holding Officer Peterson responsible for how this arrest was effected. Summary judgment will be entered in Officer Peterson's favor.

The City seeks judgment on the basis that the undisputed facts show the force used to have been reasonable under the circumstances and that, even if a violation be assumed, plaintiff has offered nothing that would show a basis for municipal liability as to it (i.e., the necessary policy or custom under Monnell).

In order to determine whether a particular use of force is "reasonable" under the Fourth Amendment, a court must make a "careful balancing of the nature and quality of the

---

[9]*As support for this assertion, defendants rely on plaintiff's own statement in his complaint that Officer Peterson's actions "led other officers and employees of the City of Midwest City to use force against the plaintiff...." [Doc. #1 at 39].*

intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989)). This balancing process "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." *Id.*

Applying these factors to the arrest involved here, the court concludes the undisputed facts show that no constitutional violation occurred. As discussed above, the officers on the scene had a reasonable basis for believing that plaintiff was in possession of incendiary devices. They observed multiple containers containing gasoline which were consistent with the characteristics of Molotov cocktails. Possession of incendiary devices is a felony under Oklahoma law and an offense of obvious gravity. There was reason to believe plaintiff represented an immediate threat to the safety of the officers and others, both by the nature of the activity in question (possession of what they thought to be incendiary devices) and by the nature of plaintiff's attitude toward the officers — he aggressively refused to cooperate with their inquiries. He told them in a hostile manner to leave his property, suggesting that he would not cooperate with any attempt to arrest him. The officers knew of the recent history of contentious interactions between plaintiff and law enforcement. The force used to effect the arrest was non-lethal, involving the use of three non-lethal rubber or sponge

projectiles.

Plaintiff insists he had no intention to use the gasoline containers as any sort of incendiary device and that the gasoline containers were being used in connection with his work on the fuel system of his vehicle. For purposes of this motion, the court fully credits plaintiff's account of his intentions. However, the pertinent inquiry for present purposes is not what plaintiff's actual intent was, or what might now be concluded with "20/20 hindsight," but is instead what a reasonable officer on the scene would have understood based on the facts which then confronted him.

Applying these standards, the court concludes the undisputed facts establish that no constitutional violation occurred—the particular use of force employed was not unreasonable under the circumstances.[10]

Summary judgment for defendants is appropriate as to the excessive force claim.

## Conclusion

For the reasons set forth above, plaintiffs' motion for summary judgment [Doc. #65] is **DENIED**. Defendants' motion for summary judgment [Doc. #66] is **GRANTED**. Judgment will be entered for defendants as to all claims.

---

[10]*As with the false arrest claim, plaintiff does not appear to challenge the City's assertion that no basis for municipal liability under <u>Monnell</u> exists. That is an alternate basis for judgment in its favor.*

**IT IS SO ORDERED.**

Dated this 18th day of March, 2015.

JOE HEATON
UNITED STATES DISTRICT JUDGE